UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:19-CR-00016-5-JRG-CRW |
| | ) | |
| MICHAEL DWAYNE MCKENZIE, JR. | ) | |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Michael Dwayne McKenzie, Jr.'s Renewed Motion for Compassionate Release [Doc. 285], the United States' Response [Doc. 286], and Mr. McKenzie's supplements [Docs. 295, 296, & 298]. For the reasons herein, the Court will deny Mr. McKenzie's motion.

### I. BACKGROUND

In 2019, Mr. McKenzie pleaded guilty to conspiring to distribute and possess with the intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. [Plea Agreement, Doc. 56; Minute Entry, Doc. 62]. The Court sentenced him to 120 months' imprisonment—the statutory minimum. [J., Doc. 119, at 2; Statement of Reasons, Doc. 120, at 1]. In 2020, he moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing the fact that his son, who suffers from epilepsy, was to undergo surgery to alleviate his symptoms and claiming that his son's medical bills had "placed a heavy burden on petitioner's wife and family." [Def.'s First Mem., Doc. 244-1, at 2]. He also requested compassionate release because he "participated in and completed extensive drug educational programs, that has lead [sic] to himself becoming drug and dependency free." [*Id.*]. The Court denied his motion on the merits because he did not satisfy § 3582(c)(1)(A)'s requirements for compassionate release. [Mem. Op. & Order, Doc. 253, at 2–3].

Mr. McKenzie then moved for reconsideration of the Court's decision, claiming, this time, that his "fiance [sic] has just been diagnosed with Diabetes and that makes her at extreme risk for COVID 19 making her life in danger." [Def.'s First Mot. Recons., Doc. 260, at 2]. Mr. McKenzie also moved for compassionate release out of concern for his own health, contending that "his life [wa]s at risk" from COVID-19 because he "had a battle with drug addiction in his past and due to that fact, his lungs and immune system have been effected [sic] horribly." [*Id.*]. In response, the United States argued that Mr. McKenzie, in moving for reconsideration, was raising "an entirely new theory of relief," for which he had not satisfied § 3582(c)(1)(A)'s mandatory exhaustion requirement. [United States' Resp., Doc. 262, at 2–3]. "[I]n deference to Mr. McKenzie's' pro se status," the Court elected to "construe his motion as a renewed motion for compassionate release, rather than address it under the rigid legal standard governing motions for reconsideration." [Mem. Op., Doc. 263, at 1 n.1]. The Court, however, denied Mr. McKenzie's motion on exhaustion grounds, though it also addressed the merits of his claims. [*Id.* at 3–7].

Mr. McKenzie then again moved for reconsideration, reiterating the same arguments he had presented to the Court in his two prior motions. He cited his son's medical condition; his fiancée's diabetes and financial struggles, which stemmed from her need to remain homebound to care for their son; and the threat that his own underlying conditions—which, he maintained, included a heart murmur and weakened immune system and lungs—would pose to his health if he were to contract COVID-19 in prison. [Def.'s Mem., Doc. 269, at 2]. Mr. McKenzie, as he did in his prior motions, also underscored his completion of various classes and rehabilitative programs. [*Id.*]. The Court again rejected Mr. McKenzie's arguments and denied his second motion for reconsideration.

2

Now, Mr. McKenzie, through the Federal Defender Services of East Tennessee (FDS), has filed a renewed motion for compassionate release, in which he once again raises issues of familial hardship and highlights his rehabilitative efforts. The United States opposes his motion. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. McKenzie's motion.

## II. ANALYSIS

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

3

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) Medical Condition of the Defendant.—
>>
>>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>> (II) suffering from a serious functional or cognitive impairment, or
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>>
>> (C) Family Circumstances.—
>>
>>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>>
>> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

5

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *id.* at 1111 (recognizing that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, 986 F.3d 951, 953–54 (6th Cir. 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court had "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors

6

(emphasis added) (citation omitted)); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)).

### A. Familial Hardship

In *Jones'* wake, some district courts continue to lean on § 1B1.13(1)(C) when defining "extraordinary and compelling circumstances" in the context of familial hardship. *See United States v. Taylor*, No. 19-20056, 2021 WL 21760, at *2 (E.D. Mich. Jan. 24, 2021) ("Although the Sixth Circuit held that U.S.S.G 1B1.13 does not apply to compassionate release motions filed by imprisoned individuals, it remains a measure by which district courts can evaluate what constitutes extraordinary and compelling circumstances." (citation omitted)); *United States v. Rice*, No. 7:15-019-DCR, 2021 WL 141690, at *2–3 (E.D. Ky. Jan. 14, 2021) ("While the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a helpful starting point for deciding whether extraordinary and compelling reasons exist."). And, again, a district court's reliance on § 1B1.13(1)(C) appears to be permissible so long as it does not rely on it exclusively—or, in other words, so long as it does not rely on § 1B1.13(1)(C) at the exclusion of an analysis under § 3553(a)'s factors. *Sherwood*, 986 F.3d at 953–54. In this case, both the United States and FDS ask the Court to consider § 1B1.13 in its analysis. [FDS's Mot. at 12]; [United States' Resp. at 8].

Section 1B1.13(1)(C) states that the "incapacitation of the caregiver of the defendant's minor child" is an extraordinary or compelling circumstance for the defendant's release.[1] Under § 1B1.13(1)(C), Mr. McKenzie must demonstrate, with evidence, that (1) his son's caregiver is incapacitated and (2) he would be the only available caregiver for his son. *See United States v. Cole*, No. 18-20237, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021) ("[D]istrict courts have routinely denied motions for compassionate release when the defendants cannot show that they would be the only available caregiver of a minor child, even if their incarceration imposes substantial burdens on a spouse or co-parent to a minor child." (citations omitted)); *United States v. Corley*, No. 3:13-cr-00097-9, 2021 WL 119640, at *1 (M.D. Tenn. Jan. 13, 2021) ("There is simply no factual predicate for the Court to find [that the defendant's] family circumstances constitute extraordinary and compelling grounds for compassionate release, which typically requires a finding that the Defendant is the only available caregiver." (citing *United States v. Lisi,* 440 F. Supp. 3d, 246, 252 (S.D.N.Y. 2020))); *United States v. Marshall*, No. 3:16-CR-00004- JHM, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) ("[The defendant] fails to provide evidence that [his grandfather] is incapacitated, i.e. that he cannot carry on any self-care. Additionally, the evidence does not reflect that [the defendant] is the only available caregiver for [his grandfather]." (footnote and citations omitted)).

Mr. McKenzie does not meet either requirement. According to Mr. McKenzie, his fiancée "was hospitalized on August 19, 2021, with diabetic ketoacidosis associated with type 2 diabetes,

---

[1] The BOP defines "incapacitation" to mean that a person has (1) "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or (2) "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair." BOP, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205g* 10 (2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdfBOP. Merriam Webster defines "incapacitate" as "to deprive of capacity or natural power."

severe sepsis, and acute hypoxic respiratory failure" and "was placed in ICU due to her life threatening deterioration." [FDS's Mot. at 12]. Although she was released from the hospital in September 2021, he claims that she has been unable to care for their son, or their daughter, "due to her decline in health." [*Id.* at 12–13]. But the record contains little if any evidence to support the contention that his fiancée is incapacitated within the meaning of § 1B1.13(1)(C). In an undated letter to the Court, his fiancée says that she is unable to lift her son, who is disabled and unable to walk, because of surgical wounds that she received while hospitalized in August 2021, but those wounds have presumably healed by now. [Jessica Holtsclaw's Letter, Doc. 285-4, at 1]. The Court is simply unconvinced, based on the evidence before it, that she is completely disabled, totally bedridden, or unable to care for her son in at least some capacity.

Besides, Mr. McKenzie does not allege anywhere in his motion that his fiancée is his son's only available caregiver, and even if he had, the record evidence would not support this allegation because, as the United States points out, it clearly demonstrates that Mr. McKenzie has other relatives who have cared for his son while his fiancée has convalesced. For example, Mr. McKenzie's mother informs the Court that "the children are being taken care of" and "two grandmothers and a sister have become the new caregivers." [Cindy Jones' Letter, Doc. 285-5, at 3]. Similarly, Mr. McKenzie's fiancée informs the Court that she has been able to "rel[y] on family" to help her with her children. [Jessica Holtsclaw's Letter at 1]. So in sum, Mr. McKenzie fails to demonstrate, with evidence, that (1) his son's caregiver is incapacitated and (2) he would be the only available caregiver for his son.

The Court sympathizes with Mr. McKenzie, his fiancée, and their family. Mr. McKenzie covets his release so he can "help [his] family," [Def.'s Letter, Doc. 285-5, at 2], and his fiancée likewise covets his release so that he can "pick[] up the pieces and help[] to put them together

9

again," [Jessica Holtsclaw's Letter at 1]. But the unhappy reality is that "[i]ncarcerated people commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct." *United States v. Williams*, No. 1:17-cr-103, 2020 WL 3502819, at *3 (S.D. Ohio June 29, 2020); *see United States v. Farnsworth*, No. 15-20095, 2021 WL 4962135, at *5 (E.D. Mich. Oct. 26, 2021) ("As other courts have recognized, it is not extraordinary or otherwise uncommon for an inmate to leave behind vulnerable family members." (citation omitted)). The Court takes no pleasure in rejecting Mr. McKenzie's plea to be with his family, but he simply does not qualify for compassionate release based on familial hardship under § 1B1.13(1)(C).

### B. Rehabilitative Efforts

Lastly, Mr. McKenzie champions his post-conviction record—his lack of disciplinary infractions, his enrollment in multiple programs, and his completion of multiple others—as a reason for compassionate release. [FDS's Mot. at 5–12]. All of his efforts and accomplishments while incarcerated are to his credit, and they will serve him well in the future, but as the United States argues, good behavior and self-improvement are expected of federal inmates. *See United States v. Hymes*, 19 F.4th 928, 934 (2021) (recognizing that a prisoner's participation in prison programs and lack of disciplinary infractions are "behavior expected of federal prisoners"); *see also United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("These admirable efforts will likely serve [the defendant] both now and well after his term of incarceration ends. But good behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *United States v. Logan*, No. 97-cr-993, 2021 WL 1221481, at *8 (D. Minn. Apr. 1, 2021) ("Prisoners are *supposed* to follow the rules, take classes, work at a job, and

10

otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary.").

Indeed, rehabilitation alone cannot justify Mr. McKenzie's release under § 3582(c)(1)(A). *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason"); *see also Ruffin*, 978 F.3d at 1009 (stating that "Congress has made clear that rehabilitation 'alone' does not provide a proper basis for relief" (citing 28 U.S.C. § 994(t))); *United States v. Neal*, No. 3:11-CR-069, 2020 WL 5603922, at *2 (E.D. Tenn. Sept. 17, 2020) ("The defendant also mentions his rehabilitative efforts. However, 'rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason[.]'" (quoting *id.*)). And yet, despite the fact that rehabilitation alone is not a basis for compassionate release, FDS, on Mr. McKenzie's behalf, relies exclusively on his rehabilitative efforts in seeking compassionate release.

FDS makes no appreciable attempt to argue that Mr. McKenzie's rehabilitative efforts, in combination with § 3553(a)'s factors, justify his release. For example, FDS mentions none of the individual factors under § 3553(a), much less performs an analysis under any one of those factors. Although it acknowledges that "the Court must consider the relevant sentencing factors in § 3553(a)," it argues only that Mr. McKenzie's "changed family circumstances alone warrant his early release," that "the COVID-19 crisis provide[s] justification to act decisively," and that the "totality of the circumstances" warrant his release. [FDS's Mot. at 13–14]. But his family circumstances do not entitle him to compassionate release, for the reasons that the Court has already articulated, and neither does the COVID-19 pandemic because FCI Williamsburg, the facility where he is incarcerated, currently has only a few active cases of COVID-19 and is not experiencing a severe outbreak. *See United States v. Elias*, 984 F.3d 516, 521 & 521 n.1 (6th Cir.

11

2021) (stating that district courts do not abuse their discretion when they consider whether the facility where the defendant resides is experiencing a severe outbreak of COVID-19).

In addition, FDS does not identify what the "totality of the circumstances" are or how they in any way dovetail with § 3553(a)'s factors. For example, FDS, under § 3553(a)(1) and (2), ignores the serious nature of Mr. McKenzie's offense and his criminal history,[2] *see United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))), and the fact that he committed this offense while serving a probationary sentence, [PSR ¶ 47]. FDS also does not address whether the Court's release of Mr. McKenzie—who has served less than half of his sentence to date—would result in unwarranted sentencing disparities under § 3553(a)(6), which the United States raises in its brief. *See Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of an inmate's request for compassionate release when he "ha[d] yet to serve even half of his 25-year sentence"). In short, FDS's failure to incorporate any of § 3553(a)'s factors into its analysis leaves the Court unable to conclude that Mr. McKenzie's rehabilitative efforts are sufficient to justify his compassionate release, and the Court must therefore deny his motion for compassionate release.

### III. CONCLUSION

The Court sympathizes with Mr. McKenzie's concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because he has not identified an extraordinary and compelling reason for his release. His Renewed Motion for Compassionate Release [Doc. 285] is therefore **DENIED**.

---

[2] Mr. McKenzie had accumulated nine criminal history points before the age of thirty. [PSR ¶ 48].

So ordered.

ENTER:

                                                            s/J. RONNIE GREER
                                        UNITED STATES DISTRICT JUDGE